

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

NOV 30 2012

CLERK, US DISTRICT COURT
NORFOLK, VA

ARTHUR HENCE,

    **Plaintiff,**

v.                                 **4:12cv1**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    **Defendant.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Arthur Hence seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. 636(b)(1)(B). The ALJ correctly determined that the Medical-Vocational Guidelines' Grid Rules did not apply to Hence, because his residual functional capacity ("RFC") placed him between the sedentary and light exertion levels. Additionally, substantial evidence supports the ALJ's finding that employment was available for Hence and that his chronic obstructive pulmonary disease ("COPD") with emphysema was non-

1

severe. Accordingly, this report recommends that the final decision of the Commissioner be affirmed.

## I.  **PROCEDURAL BACKGROUND**

On September 28, 2009, Hence filed applications for disability insurance benefits ("DIB") and SSI, alleging disability beginning March 20, 1999. (R. 121-123, 323-29). The Commissioner denied his applications initially (R. 102-06, 318-22), and upon reconsideration. (R. 92-94, 314-16). Hence requested an administrative hearing (R. 85-89, 307-11), which was conducted on June 8, 2011. (R. 330-352). Hence engaged in substantial gainful activity after 1999 and at the hearing amended his alleged disability onset date to November 29, 2010. (R. 48-49, 335). Since Hence was last insured on December 31, 2004, he is no longer eligible for DIB, though he is still eligible for SSI. (R. 108, 335).

Administrative Law Judge ("ALJ") Jeffrey M. Jordan concluded that Hence was not disabled within the meaning of the Social Security Act, and denied his claim for SSI. (R. 11-25). The Appeals Council denied review of the ALJ's decision (R. 7-9), thereby making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), on January 3,

2012, Hence filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court to resolve the parties' cross-motions for summary judgment.

## II.  FACTUAL BACKGROUND

Hence was born on December 4, 1959 (R. 323), and attended high school through the eleventh grade. (R. 335-36). He testified that he is 5'8" and weighs 185 pounds. (R. 337). He was previously employed as a cook and laborman. (R. 140). From 2005 to 2007 he was employed as a furniture mover. (R. 169). This job primarily involved lifting and carrying furniture weighing up to one hundred pounds. (R. 172). In his application and at the hearing, Hence alleged that he could not work due to a variety of physical impairments including right hip pain (R. 337-38), sciatic pain in the right leg (R. 337-38), back pain (R. 139, 338), emphysema (R. 339-40), alcohol abuse (R. 139), and rheumatoid arthritis. (R. 139).

The Record indicates that Hence consulted Dr. Seth Tuwiner, a board-certified psychiatrist and neurologist with the Virginia Department of Rehabilitative Services, on March 25, 2010. (R. 198-202). He reported having back and hip pain, rheumatoid arthritis, and drug and alcohol abuse issues. (R. 198). Dr.

Tuwiner noted that Hence had constant pain in his lower back and hips which was more acute on his right side. Id. Hence informed Dr. Tuwiner that he had not received any specific treatment or therapy for the pain, nor had he seen a rheumatologist concerning his arthritis despite having been diagnosed ten years prior. (R. 199). He further reported that he smokes six to eight packs of cigarettes a month, could walk for two hours at a time and does not drive. Id. Dr. Tuwiner found Hence had clear lungs, normal gait, normal range of motion in all major joints, no joint deformity with only slightly arthritic changes in the bilateral greater toes, and full power in both proximal and distal extremities. (R. 199-200). He diagnosed Hence with low back pain indicative of lumbosacral radiculopathy and/or hip arthritis, suspected rheumatoid arthritis, bilateral toe joint deformity with possible gout, alcoholism, and history of drug use. (R. 200). He found that Hence could walk and/or stand for five hours in an eight-hour day, had no limit on sitting, had only occasional postural limitations with bending, stooping or crouching, and could lift thirty pounds occasionally and fifteen pounds frequently. (R. 201).

On March 31, 2010, Carolina Longa, M.D., a physician consultant, reviewed Hence's records and completed a Disability

Determination Explanation. (R. 294-306). Dr. Longa opined that Hence was not disabled and capable of performing work which required him to lift and/or carry no more than fifty pounds occasionally and twenty-five pounds frequently; sit and stand and/or walk about six hours each in an eight-hour workday; with no climbing ladders, ropes or scaffolds, but allowing for other postural activities (i.e., balancing, stooping, kneeling, crouching, and crawling) occasionally or frequently. (R. 302, 305). He also had to avoid concentrated exposure to hazards (e.g., machinery and heights), but exposure to fumes, odors, dust, gases, and poor ventilation was unlimited. (R. 303). Dr. Longa found Hence's statements concerning his symptoms and their effects partially credible, believing that while Hence does have some limitations he overstates their extent. (R. 301).

Hence visited the Emergency Department at Mary Immaculate Hospital on April 26, 2010 and was seen by Dr. Thomas J. Henderson. (R. 251-74). He complained of abdominal pain, back pain, and vomiting for a couple weeks. (R. 251). He reported a pain level six out of ten, and stated that he smoked one pack of cigarettes a day and regularly consumed alcohol. (R. 252). Dr. Henderson noted that Hence displayed no obvious distress and was conversant and laughing. (R. 253). Dr. Henderson's examination

5

revealed nothing remarkable, except for diffuse pain in the lower back upon touching and range of motion testing. Id. Hence could move all four extremities without difficulty, and had no trouble breathing or other respiratory issues. (R. 253, 263). Dr. Henderson diagnosed Hence with abdominal pain with an unknown cause and with anemia without transfusion. (R. 266, 268). He proscribed 300mg of Zantac and discharged Hence with further instructions for follow-up care. (R. 264, 270).

In July 2010, Michael Cole, D.O., reviewed Hence's file and completed a Disability Determination Explanation. (R. 283-93). Dr. Cole found Hence had medically determinable impairments: discogenic and degenerative disorders of the back which were severe, as well as substance addiction. (R. 287). Dr. Cole stated that Hence was capable of performing work with the following limitations: he could lift and/or carry no more than fifty pounds occasionally and twenty-five pounds frequently; sit and stand and/or walk about six hours each in an eight-hour workday; and perform no climbing of ladders, ropes or scaffolds, but could perform other postural activities. (R. 290). He also had to avoid concentrated exposure to hazards, but his exposure to fumes, odors, dust, gases, and poor ventilation was not limited. (R. 291). Ultimately, Dr. Cole concluded that Hence was

not disabled and only partially credible, because he overstated his limitations due to his alleged impairments. (R. 289, 293).

Hence began seeing Aladee R. Delahoussaye, M.D., as his primary treating physician in June 2010. (R. 206-232). Dr. Delahoussaye found that Hence had a nodule on his lungs, gastroesophageal reflux, hypertension, chronic anemia, and pain in his limbs. (R. 218, 221). He ordered a chest CT, which showed evidence of COPD with emphysema. (R. 233). In July 2010, he proscribed albuterol to treat the COPD symptoms. (R. 215). He also proscribed ranitidine to deal with the reflux and naproxen for the back pain. (R. 213, 219, 223). In November 2010, Hence visited Dr. Delahoussaye with complaints of right hip pain which radiated down his leg. (R. 210). At a follow up appointment in December 2010, Dr. Delahoussaye determined that Hence had sciatica and proscribed Medrol. (R. 208). When Dr. Delahoussaye last followed up on Hence's hypertension in January 2011, he again found sciatica and proscribed naproxen. (R. 206). During this follow-up, Dr. Delahoussaye noted that Hence's lungs were clear with no wheezes, rhonchi,[1] or rales. Id.

On November 29, 2011 Hence treated with Robert C. Dearnley,

---

[1] Dorland's Illustrated Medical Dictionary 1667 (31st ed. 2007), defines rhoncus(i) as "a continuous sound . . . consisting of a dry, low-pitched, snore-like noise, produced in the throat or bronchial tube due to a partial obstruction such as by secretions."

PA-C, in the emergency department at Mary Immaculate Hospital. (R. 235). Hence reported right hip and lower back pain "for a while," with occasional shooting pain down the right leg. (R. 235-36). He had no evidence of trauma or pain, full use of all four extremities, normal gait, mild tenderness in the right sciatic notch, was alert and in no distress, and breathed normally without wheezes, rhonchi, or rales. (R. 236). Dr. Ralph H. Robertson ordered that he apply an ice pack and undergo an x-ray. (R. 237). The x-ray revealed mild to moderate degenerative changes in the left hip and advanced degenerative changes in the right hip. (R. 237). Hence was diagnosed with degenerative joint disease and sciatica. (R. 241). He was given a prescription for Vicodin and a Medrol Dose Pak to treat the symptoms. Id.

Hence began treatment with the Hampton-Newport News Community Services Board in April 2011. (R. 275-82). He reported a history of depression, alcohol abuse, and crack cocaine use. (R. 275). The Board diagnosed him with alcohol dependence, cocaine abuse, and depressive disorder. (R. 277). At a May 31, 2011 med management evaluation Hence stated that he was unable to work due to musculoskeletal problems. (R. 275). He also stated his mood was "in between," he was not sleeping well, and

he was unable to take a previous prescription of Prozac because he could not afford it. Id. Dr. Robert G. Marietta noted that Hence appeared well groomed, in a pleasant mood, had no psychomotor abnormalities, kept good eye contact, and his thought processes were logical. Id. Dr. Marietta further cited that Hence's depression and cocaine abuse were in remission but that his alcohol dependence persists. Id. He proscribed Prozac for depression and Trazodone for insomnia, and he suggested that Hence abstain from alcohol and drugs. Id.

At the hearing, Hence testified that he is disabled and unable to work because of pain in his right hip, sciatic pain affecting his right leg, and difficulty breathing due to emphysema. (R. 337-40). He stated he currently takes Medrol and Naproxen for his pain and Albuterol for his emphysema. (R. 339-40). He testified that the longest he can stand and/or walk is fifteen to twenty minutes before needing to sit for roughly one hour. (R. 341). He attributed this to both his pain and difficulty breathing when he walks. Id. Hence further stated that he has trouble lifting and carrying and cannot bend down, though he acknowledged he is capable of carrying a ten pound bag of potatoes along with other groceries. (R. 342-44). He also testified that he lives with his sister and continues to

struggle with alcoholism but recently started receiving treatment. (R. 336-37, 344-45).

In addition to Hence's testimony, the ALJ heard from Barbara Byers, a vocational expert ("VE"). The VE testified based upon limitations framed by the ALJ that Hence could work as a rental clerk, parking cashier, or mail clerk, which she classified as light duty, unskilled labor. (R. 347). She testified that there were approximately 8,000 positions locally and 468,000 positions available nationally for the occupation of rental clerk, 1,500 positions locally and 140,000 nationally for parking cashier, and 3,000 positions locally and 200,000 nationally for mail clerk. Id. She stated that mail clerk's classification number was 209.687-026, and parking cashier's classification number was 915.473-010, though she never stated a classification number for the rental clerk occupation. (R. 348). She also testified that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), and that she was familiar with these occupations through her work as a vocational counselor. (R. 347-48).

## III. **STANDARD OF REVIEW**

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's]

designate, the ALJ)." _Craig_, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. _Perales_, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. _Coffman v. Bowen_, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To be eligible for SSI payments under Title XVI of the Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. §§ 1382(a) and (b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. §§ 1381(a) and (c).

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted and can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); _see also_ 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in

the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R.

13

§§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's education background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## 1. ALJ's Decision

In this case, the ALJ made the following findings under the five part analysis: (1) the ALJ found that Hence had not engaged in substantial gainful activity since November 29, 2010 (the amended alleged onset date); (2) Hence had severe impairments of disorders of the back, osteoarthritis, affective disorder, and substance use disorder; (3) his combination of impairments did not meet one of the listed impairments in Appendix 1; (4) Hence had the RFC to perform less than the full range of light work

with specified limitations. He could lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently, but can carry only short distances. Additionally, he could stand and/or walk for about two hours in an eight-hour workday, but can stand and/or walk for only fifteen to twenty minute intervals before sitting for no more than one hour. The ALJ further specified that he must avoid kneeling, crawling, and climbing ladders, ropes, and scaffolds, but noted that he could stoop or bend at the waist occasionally to pick up an object at table level but not a flat object from the floor. Finally, although the ALJ concluded that Hence could not perform his past relevant work, he did identify jobs which exist in substantial numbers in the national economy which Hence could perform. (R. 16-24).

In his motion for summary judgment, Hence primarily argues the ALJ erred in finding that his RFC allowed him to perform any light work, and that the ALJ should have found he had a sedentary RFC and was disabled pursuant to Grid Rule 201.10. See 20 C.F.R. Pt. 404, Sbpt. P, App. 2. This argument hinges upon his claim that light work requires one to stand and/or walk at least 2.67 hours of an eight-hour workday. (ECF No. 12-2 at 4-6). Since the ALJ found that Hence could stand and/or walk "about two hours of an eight-hour workday," Hence argues that he

cannot perform any light work. Id. Additionally, he argues that the ALJ's sit-stand requirements limit him to one hour and forty-five minutes of standing and/or walking, which Hence claims limits him to exclusively sedentary work. Id. at 6-7. Hence further contends the ALJ's finding that he could perform other work is not supported by substantial evidence, because the VE's testimony at the hearing conflicted with the DOT. Id. at 8-9. Finally, Hence argues that the ALJ erred at Step Two in finding that COPD with emphysema was a "non-severe" impairment. Id. at 9-11.

> **2. The ALJ did not err in not applying the Grid Rules, and his finding that Hence's RFC allows him to perform more than sedentary, but less than the full range of light work, was supported by substantial evidence.**

The ALJ found that Hence had the RFC to perform more than sedentary but less than the full range of light work. Specifically, he found that Hence had the ability to perform the lifting requirements of light work, but could stand and/or walk less than what is required for the full range of light work.[2] Ultimately, the ALJ concluded, with the assistance of a VE, that

---

[2] Light Work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Additionally, the full range of light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5-6.

Hence was capable of performing specific light-level jobs, such as mail clerk and parking cashier, which exist in significant numbers in the local economy.

Hence does not challenge the ALJ's assessment of his RFC and the corresponding limitations. Rather, he contends that, based on his RFC, he was restricted to sedentary work. In Hence's view, because the ALJ found that he could only stand and/or walk "about two hours," (R. 19), he is incapable of performing any amount of light work. This view rests on his interpretation that to perform any amount of light work requires a person to be able to stand or walk "at least 2.67 hours in an eight-hour workday." (ECF No. 11 at 5). The number 2.67 hours appears nowhere in the Grid Rules, nor in the definition of light work. Hence and his counsel observe, however, that light work requires one to lift or carry ten pounds frequently, and that "frequently" means "occurring from one-third to two-thirds of the time."[3] SSR 83-10, 1983 WL 31251, at *5-6. From this Hence extrapolates that the ability to lift or carry also requires standing or walking, because in his estimation "one must stand to lift" and "one must walk to carry." (ECF No. 12-2 at 4). Therefore, Hence concludes that one must be able to stand or

---

[3] Hence supplies 2.67 hours, because one-third of an eight-hour workday is 2.67 hours.

walk at least 2.67 hours of an eight-hour workday to fulfill the frequent lifting requirements of light work.

Additionally, he claims that SSR 83-10 unequivocally states that a RFC limiting standing to one to two hours is a sedentary RFC. He contends, therefore, that his RFC limits him to exclusively sedentary work, because the ALJ found that he could only stand about two hours and the sit-stand requirement limits his standing to one hour and forty-five minutes of an eight-hour workday. Accordingly, he argues that he is incapable of fulfilling either the lifting or other exertional requirements of light work, and thus, maintains the ALJ's functional limitations set forth in his RFC finding limit him to sedentary work. Thus, Hence argues that Grid Rule 201.10 applies and a finding of disabled is warranted.[4]

Hence misunderstands the analytical approach the ALJ must undertake to determine if he is disabled. Before step four, the ALJ determines the claimant's RFC by considering how the physical and mental limitations caused by the impairment(s) affect a person's ability to work. 20 C.F.R. § 416.945(a). Only after this assessment "may the RFC be expressed in terms of the

---

[4] Grid Rule 201.10 applies when the applicant meets all the criteria of a sedentary RFC and is an individual approaching advanced age, not a high school graduate, and does not have transferable skills. 20 C.F.R. Pt. 404, Sbpt. P, App. 2.

18

exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8P, 1996 WL 374184, *at 1 (July 2, 1996). Importantly, the RFC is the most a person can do despite his limitations. 20 C.F.R. § 416.945(a)(1). Here, the ALJ properly determined Hence's limitations, and from these limitations he concluded Hence was able to perform a limited range of light work.

Hence's contention that to perform any degree of light work requires at least 2.67 hours of standing and/or walking is incorrect. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b) (emphasis added). A job is also considered light work "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. (emphasis added). To perform the full range of light work a person "must have the ability to do substantially all of these activities." Id. Here, the ALJ found that while Hence could not perform the full range of light work, (because he could not do substantially all of the activities required) he did have the exertional capability to fulfill the lifting requirements for

light work.[5] Also, the jobs identified by the VE involved sitting most of the time.

Hence argues, however, that the ALJ's finding that he could only stand and/or walk about two hours contradicts the light work requirement that he be able to lift or carry ten pounds frequently. Yet, Hence cites no authority which supports his proposition that "one must stand to lift." (ECF No. 12-2 at 4). While it is true that sometimes lifting or carrying requires one to stand or walk, this is not always the case. Indeed, a person can lift from a seated position. As such, a person could do some lifting while seated and some lifting while standing, and consequently, not stand for a total exceeding two hours. Moreover, the definition of light work acknowledges that some light work can be performed while "sitting most of the time." 20 C.F.R. § 416.967(b). Accordingly, Hence's claim that light work always requires one to stand "at least 2.67 hours" is wrong.

Additionally, Hence incorrectly argues that a RFC limiting the claimant to "about two hours" of standing leaves only sedentary work available. Sedentary works requires "occasionally lifting or carrying articles." 20 C.F.R. § 416.967(a). SSR 83-10 states that the occasionally requirement means that for

---

[5] The ALJ found that Hence could lift up to twenty pounds at a time and ten pounds frequently. (R. 19).

20

sedentary work "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5. Thus, a job which requires more than two hours of standing and/or walking is generally beyond the scope of sedentary work. But an RFC limiting standing or walking to about two hours does not mandate a finding that Hence could only perform sedentary work.

Rather, the ALJ's finding that Hence could fulfill the lifting requirements of light work and the standing and/or walking requirements of sedentary work places his RFC between the sedentary and light exertional levels. The ALJ's sit-stand requirement also places Hence between exertional levels.[6] In Golini v. Astrue, the Fourth Circuit found that SSR 83-12 "notes that an individual with a sit-stand requirement may not meet the definition of either the sedentary or light work classifications." Golini v. Astrue, No. 11-2289, slip op. at 1 (4th Cir. June 14, 2012). "This is because '[s]uch an individual

---

[6] The ALJ's sit-stand requirement does not necessarily limit Hence to one hour and forty-five minutes of standing as Hence suggests. The ALJ's finding was that Hence could "stand and/or walk for no more than 15 to 20 minutes at a time before alternating to sitting, and sit for no more than one hour at a time before standing." (R. 19). Hence derives his one hour and forty-five minute figure from his own calculation which uses 17.5 minutes of standing, since it is the average between fifteen and twenty. Yet, the ALJ found that Hence could stand up to twenty minutes at a time. When twenty minutes is used in Hence's formula, the total time for standing and/or walking in an eight-hour workday is two hours, which is in line with the general standing and/or walking limitation of "about 2 hours" imposed by the ALJ. Id.

is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work.'" Id. (quoting SSR 83-12, 1983 WL 31243, at *4).

When an individual's RFC falls between exertional levels the Grid Rules do not apply. Id. The Commissioner "may rely on the [Grid Rules] only in 'appropriate cases.'" Id. The Grids are not appropriate when any "one or more of the criteria of a [grid] rule are not met." SSR 83-10, 1983 WL 31251, at *1. The Grid Rules and SSR 83-12 both note that when a claimant's RFC is between exertional levels, then not all criteria are met, and the Grid Rules do not direct a conclusion. 20 C.F.R. Pt. 404, Sbpt. P, App. 2, 200.00(d); SSR 83-12, 1983 WL 31253, at *1. Rather, in these cases, the Grid Rules provide a framework and guidance to the ALJ as the decision-maker. Golini v. Astrue, No. 2:10cv525, 2011 WL 4409223, at *5 (E.D. Va. Aug. 16, 2011); 20 C.F.R. Pt. 404, Sbpt. P, App. 2, 200.00(d); see SSR 83-12, 1983 WL 31253. Additionally, when the ALJ imposes exertional and nonexertional limitations (i.e, a climbing, balancing, stooping, kneeling, or crawling limitations), the Grid Rules do not apply and the Grid rules are used "in conjunction with the definitions and discussions provided in the rest of the regulations, as a

framework for decisionmaking." SSR 83-14, 1983 WL 31254, at *1; see also Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) ("[W]hen a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines."); 20 C.F.R. § 404.1569a; 20 C.F.R. Pt. 404, Sbpt. P, App. 2 § 200.00(e)(2).

In this case, because the ALJ's determined that Hence could not do the full range of light work but could do more than sedentary work; and because his RFC included nonexertional limitations, the Grid Rules do not direct a conclusion of disabled or not disabled. Instead, the Grids are used as a framework by the ALJ at steps four and five to determine if the individual is capable of performing past relevant work or any other work. See 20 C.F.R. Pt. 404, Sbpt. P, App. 2 § 200.00(e)(2).

To determine disability when the RFC indicates a combination of exertional and non-exertional limitations, the ALJ must first consider whether the claimant is disabled based on strength (exertional) limitations alone. 20 C.F.R. Pt. 404, Sbpt. P, App. 2 § 200.00(e)(2); 20 C.F.R. § 404.1569a(d). As noted, Hence was not disabled based on exertional limitations alone, as his RFC was between the sedentary and light levels,

and therefore, Grid Rule 201.10 did not apply.

Next, the ALJ must, in addition to using the Grids as a framework, consider all the relevant factors and principles set forth in the regulations. 20 C.F.R. Pt. 404, Sbpt. P, App. 2 § 200.00(e)(2); see also SSR 83-14, 1983 WL 31254, at *3. The corresponding policy statement recommends that the ALJ consult a vocational expert in cases where the claimant has a combination of exertional and non-exertional limitations. SSR 83-14, 1983 WL 31254, at *4; see also Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983) (finding use of a VE helpful and, in some cases, necessary). When the ALJ consults a vocational expert and finds claimant not disabled, the decision should include: "(1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country." SSR 83-14, 1983 WL 31254, at *6.

In this case, the ALJ proceeded exactly as the rules require. Using the Grids as a framework he consulted a VE and presented a hypothetical to her which incorporated the limitations found in the record. (R. 19, 347). Based on the facts in the hypothetical, the VE offered her opinion that Hence

24

could perform light work jobs which existed in the national and local economies in significant numbers, including rental clerk, parking cashier, and mail clerk. (R. 347). Accordingly, the ALJ found Hence could perform some light work and cited each of these occupations noting that 8,000 rental clerk, 1,500 parking cashier, and 3,000 mail clerk positions existed locally. (R. 23).

In light of Fourth Circuit precedent, the regulations, and related policy statements the undersigned finds that the ALJ correctly determined that the Grid Rules did not apply to direct a finding of disabled. Hence's RFC placed him between the sedentary and light ranges, and he suffered from both exertional and non-exertional limitations. Accordingly, the ALJ consulted with a vocational expert to determine if there was work which existed in significant numbers which Hence could perform. Because the VE credibly testified that there was such work, substantial evidence supports the ALJ's conclusion that Hence was not disabled.

## 3. The ALJ's finding of available employment was supported by substantial evidence.

At stage five in the evaluation, the ALJ found that there were jobs which exist in significant numbers in the national

economy which Hence could perform. In doing so, the ALJ relied upon testimony from the VE, who identified three positions which Hence could perform: rental clerk, with 8,000 locally available positions, and 468,000 positions available nationally; parking cashier with 1,500 locally available positions, and 140,000 positions available nationally; and mail clerk with 3,000 locally available positions, and 200,000 positions available nationally.

Hence complains that the VE testified that "parking cashier" is classified as DOT number 915.473.010, whereas the title attributed to that classification number is "parking-lot attendant" not parking cashier. Hence suggests there are material differences between being a cashier versus a lot attendant, and argues that the VE improperly testified that the job of parking-lot attendant was within his limitations. Additionally, he contends the VE improperly testified that the job of mail clerk was within his limitations. Finally, Hence argues the VE testified that "rental clerk" is classified as DOT number 209.687.026, when in fact this classification number is for "mail clerk," and therefore, the ALJ was not entitled to rely on the VE's testimony concerning the rental clerk position. After reviewing the record and DOT classifications the

undersigned finds no error of law in the ALJ's reliance on VE testimony.

Hence's first argument involves the job title of Section 915.473-010 of the DOT, of "parking-lot attendant." (ECF No. 12-2 at 8-9). At the hearing, the VE referred to this position as parking cashier, and now, Hence claims there are major differences between the two. Hence relies on the definition of parking-lot attendant but does not refer to any definition for parking cashier, nor does he specify any differences.[7] The VE may have misspoke as to the title for DOT number 915.473-010 when she called the occupation parking cashier rather than parking-lot attendant. Such a misstatement is de minimis, and thus, not an error warranting remand. See Fisher v. Barnhart, 181 F. App'x 359, 367 (4th Cir. 2006) (holding that though the VE misremembered and misstated the job titles and codes in question, it was not in conflict with DOT and not reversible error).

Hence next relies on Sections 915.473-010 and 209.687-026 of the DOT, which describe the general duties of a parking-lot attendant and mail clerk respectively. (ECF No. 12-2 at 8-9).

_____

[7] A definition for the occupation "Cashier II," which may also be designated as "Parking Lot Cashier," exists under DOT number 211.462.010. This position is classified as light work and has identical strength limitations as the "Parking-Lot Attendant" occupation under DOT number 915.473-010.

After reviewing the detailed descriptions in the DOT, the undersigned does not find them inconsistent with the VE's testimony or Hence's RFC as found by the ALJ. The descriptions – as quoted in Hence's brief - include many individual duties not all of which are required by every available job within the occupations. Moreover, the VE explicitly testified that her findings were consistent with the DOT, and that she was familiar with these jobs through her work as a vocational expert. Therefore, the ALJ was entitled to rely on her testimony. <u>See</u> SSR 00-4p, 2000 WL 1898704.

Finally, the fact that the ALJ relied on the VE's testimony about the rental clerk position is not sufficient to warrant reversal. As conceded by the Defendant, rental clerk is not a unique occupation, but rather its own occupational group. (ECF No. 17 at 17). Accordingly, it was improper for the ALJ to rely on the VE's testimony regarding rental clerk, because the VE did not specify any specific occupations or occupational codes within the group. Nonetheless, the ALJ's finding that there were a significant number of jobs which existed within the local economy which Hence could perform remains valid. The VE still testified that the occupation of parking-lot attendant would yield 1,500 positions within the local economy and 140,000

within the national economy, and the occupation of mail clerk would yield 3,000 positions within the local economy and 200,000 within the national economy. The Fourth Circuit has suggested in dicta, that 110 jobs in the local economy would not constitute an insignificant number. Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979). Other Circuits have found jobs in significant numbers at levels far below that described by the VE in this case. Craigie v. Bowen, 835 F.2d 56, 58 (3rd Cir. 1987) (200 jobs in region); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs in local economy). Under these circumstances, the VE's descriptions of the occupations of parking-lot attendant and mail clerk, as well as the number of locally available jobs in those two positions, was substantial evidence to support the ALJ's finding of available work.

4. **Substantial evidence contained in the record as a whole supports the ALJ's finding that Hence's COPD with emphysema impairment was non-severe.**

Hence's final argument alleges that the ALJ erred in finding COPD with emphysema to be a non-severe medical impairment. (ECF No. 12-2 at 9-11). The ALJ found that although Hence was diagnosed with COPD with emphysema, his medical records and respiratory examinations showed his lungs to be

29

clear with no abnormalities. (R. 17). The ALJ concluded that Hence's COPD was non-severe, because it caused only minimal limitation in his ability to perform basic work activities. Id.

At step two of the sequential analysis, the ALJ must determine whether the plaintiff has a severe, medically determinable physical or mental impairment. 20 C.F.R. §§ 1520(a)(4)(ii) and 416.921. The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits [the plaintiff's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c) and 416.920(c). In contrast, an impairment is not severe when it is only a slight abnormality that would have no more than a minimal effect on an individual's ability to work, regardless of the individual's age, education or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984); see 20 C.F.R. §§ 404.1521(a) and 416.921. "At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, 1985 WL 56856, at *4 (emphasis supplied). Impairments must be established by "medically acceptable clinical and laboratory diagnostic techniques," and must have lasted or be expected to last twelve

30

months.   20 C.F.R. §§ 404.1508 and 1509.

In this case, the undersigned finds that there is substantial evidence to support the ALJ's determination that Hence's COPD with emphysema had no more than a minimal effect on his ability to perform basic work activities. While a June 2010 CT scan diagnosed Hence with COPD with emphysema, the only support for any symptoms is his own testimony. The objective medical evidence, however, supports the ALJ's finding that his respiratory problems would not affect his ability to perform basic work activities. Dr. Tuwiner and Dr. Henderson each noted that Hence's lungs were clear and he had no difficulty breathing. (R. 199, 253, 263). Physician assistant Dearnley also found that his respiration was normal and breathing sounded clear. (R. 236). Notably, both Dr. Longa and Dr. Cole found that no limits were necessary for Hence's exposure to pulmonary irritants such as dust, fumes, and poor ventilation. Additionally, at his January 2011 follow-up with Dr. Delhoussaye, seven months after the COPD diagnosis, Hence's lungs were clear and he suffered no wheezes, rhonchi, or rales. (R. 206). Therefore, the undersigned finds that substantial evidence supports the ALJ's finding that Hence's COPD with emphysema is non-severe.

## V. __RECOMMENDATION__

For the foregoing reasons, the undersigned recommends that the Court GRANT the Commissioner's motion for summary judgment, DENY the Plaintiff's motion for summary judgment, and affirm the final decision of the Commissioner.


## VI. __REVIEW PROCEDURE__

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth

above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
November 20, 2012

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Robert Wayne Gillikin, II
Rutter Mills LLP
160 W Brambleton Ave.
Norfolk, VA 23510

Virginia Lynn Van Valkenburg
U.S. Attorney's Office
101 W. Main Street, Suite 8000
Norfolk, VA  23510

Fernando Galindo, Clerk

By _____
Deputy Clerk

_____ , 2012